UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION 1155 21st St, NW Washington, DC 20581 | ) ) ) ) | Case No. |
| Plaintiff, | ) ) ) | COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND |
| vs. | ) ) | FOR CIVIL PENALTIES UNDER THE COMMODITY EXCHANGE ACT, AS |
| COCOON TRADE INC. 5445 85th Avenue, Apt. 202, Lanham, MD 20706 Prince Georges County | ) ) ) ) ) | AMENDED, 7 U.S.C. §§ 1-et seq |
| and | ) ) | |
| KENNETH L. BRANCH 5445 85th Avenue, Apt. 202, Lanham, MD 20706 Prince Georges County | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## I.

## JURISDICTION AND VENUE

1.      The Commodity Exchange Act, as amended (the "CEA"), 7 U.S.C. § 1 *et seq.*
(2002), establishes a comprehensive system for regulating the purchase and sale of commodity

futures contracts and options on commodity futures contracts.  This Court has jurisdiction over

this action pursuant to Sections 6c and 6d of the CEA, 7 U.S.C. § 13a-1 and § 13a-2 (2002).

2.      Section 6c of the CEA provides that whenever it shall appear to the Commodity

Futures Trading Commission ("Commission") that any person has engaged, is engaging, or is

about to engage in any act or practice constituting a violation of any provision of this Act or any

rule, regulation or order promulgated thereunder, the Commission may bring an action against such person to enjoin such practice or to enforce compliance with the CEA.

3.    Venue properly lies with this Court pursuant to Section 6c(e) of the CEA, 7 U.S.C. § 13a-1(e) (2002), in that Defendants are found in, inhabit, or transact business in this District, and the acts and practices in violation of the CEA have occurred, are occurring, or are about to occur, within this District, among other places.

## II.

## SUMMARY

4.    Commencing in the spring of 2005 and continuing through February 2007 (the "relevant period"), Defendants Cocoon Trade, Inc. ("Cocoon") and Kenneth L. Branch ("Branch") fraudulently solicited and accepted at least $1,291,600 from at least 39 members of the general public to participate in a commodity pool to trade, amongst other instruments, e-mini S & P 500 and e-mini Russell 2000 futures contracts. The Defendants also fraudulently solicited investors to open individual trading accounts and grant them discretionary authority over the trading of the accounts. At least ten investors, almost all of whom were also pool participants, opened individual managed accounts for a total of approximately $222,500. Defendants' fraudulent solicitation practices included claiming that Branch was a successful trader, guaranteeing a positive monthly return and failing to disclose the risks of trading commodity futures contracts.

5.    Contrary to Defendants' representations, Branch was not a successful trader. Defendants' trading on behalf of investors during the relevant period resulted in losses every month except the last month. Defendants also misappropriated approximately $941,897 of pool funds. Defendants used the misappropriated funds to pay "purported monthly profits" to pool

participants, and thus conceal the trading losses, and to pay for personal expenses such as rent, car payments, groceries, credit card payments and hotels.

6.      Defendants used the mails or instrumentalities of interstate commerce in their solicitation of investors.

7.      Cocoon acted as a commodity pool operator ("CPO") in managing the pooled investments and as a commodity trading advisor ("CTA") in managing the individual trading accounts without being registered as a CPO and CTA as required. In soliciting investments on behalf of Cocoon, Branch acted as an Associated Person ("AP") of Cocoon without being registered as required.

8.      Defendants offered and sold unregistered securities in the form of loan agreements to participate in Defendants' pooled investment vehicle. By offering and selling these securities and managing the portfolios of the pool and of individual clients for compensation, Defendants acted as an unregistered broker-dealer and agent and unregistered investment adviser and investment adviser representative.

9.      Defendants' fraudulent solicitation of investors and misappropriation of pool participants' funds violates Sections 4b(a)(2)(i) and (iii) and 4o(1) of the CEA, 7 U.S.C. §§ 6b(a)(2)(i) and (iii) and 6o(1) (2002).

10.     Cocoon's failure to register as a CPO and CTA violates Section 4m(1) of the CEA, 7 U.S.C. § 6m(1) (2002). Branch's failure to register as an AP of Cocoon violates Sections 4k(2) and (3) of the CEA, 7 U.S.C. §§ 6k(2) and (3) (2002).

11.     Cocoon, while acting as a CPO, violated Commission Regulations ("Regulations") 4.20(a)(1), (b) and (c), 4.21, and 4.22, 17 C.F.R. §§ 4.20(a)(1), (b) and (c), 4.21, 4.22, by failing to operate the pool as a separate legal entity, receiving pool funds in the name of

3

Cocoon and Branch and not in the name of the pool, commingling pool funds in accounts belonging to Cocoon and Branch, and failing to provide pool participants with Disclosure Documents and account statements. While acting as a CTA, Cocoon violated Regulation 4.31, 17 C.F.R. § 4.31, by failing to provide Disclosure Documents containing required information to investors.

12.     Pursuant to Section 13(b) of the CEA, 7 U.S.C. §13c(b), Branch is liable for the violations of Cocoon, because he is a controlling person of Cocoon and either knowingly induced or did not act in good faith concerning the acts and practices of Cocoon that constituted the violations of the CEA and Regulations set forth above. Pursuant to Section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2, Cocoon is liable for the violations of Branch, its agent.

13.     Accordingly, pursuant to Section 6c of the CEA, 7 U.S.C. § 13a-1 (2002), the Commission brings this action to enjoin the unlawful acts and practices of Defendants. In addition, the Commission seeks civil monetary penalties for each violation of the CEA and Regulations, disgorgement of Defendants' ill-gotten gains, restitution to investors, prejudgment interest and such other relief as this Court may deem necessary or appropriate.

14.     Unless enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint, as more fully described below.

### III.

### THE PARTIES

15.     Plaintiff Commission is an independent federal regulatory agency that is charged with responsibility for administering and enforcing the provisions of the CEA, 7 U.S.C. §§ 1 *et seq.* (2002).

4

16.     Defendant Cocoon was incorporated in Maryland on April 27, 2005 and has its principal place of business at 5445 85th Avenue, Apt. 202, Lanham, MD 20706. Cocoon maintains a presence on the world-wide web at www.cocoontrade.com. Cocoon has never been registered with the Commission in any capacity.

17.     Defendant Branch is an individual whose last known residential address is 5445 85th Ave., Apt. 202, Lanham, MD 20706. Branch is a felon who served twelve years in federal prison on drug related charges. In 2007, Branch was arrested and imprisoned for violating the terms of his release. Branch is the president of Cocoon, and on behalf of Cocoon and himself, has been engaged in the business of soliciting investors to open individual commodity futures trading accounts or to participate in a commodity pool, under the management of Cocoon and Branch. Branch has never been registered with the Commission in any capacity.

**IV.**

**FACTS**

18.     During the relevant period, Cocoon and Branch fraudulently solicited at least $1,414,100 from at least 39 individuals to invest in a commodity pool ("pool") or individual managed trading accounts that would trade e-mini S&P 500 and e-mini Russell 2000 futures contracts as well as other instruments.

19.     Branch formed his company, Cocoon, following his release from federal prison in 2004. Defendants also developed a website, www.cocoontrade.com. On the website, Branch identified himself as the President of Cocoon. In his solicitation of prospective investors, Branch told them that he learned about trading stocks and commodity futures while in prison.

20.     According to the website, www.cocoontrade.com is "a forecasting service that is owned by Cocoon Trade, Inc., an independent research company that specializes in providing

5

financial market analysis and forecasting of short & long-term movements in index equities, stock index futures and individual stocks."

21.     On the website, Branch asserted that he conducted over eight years of "in-depth analysis of the correlations that existed between the different markets" and developed a forecasting/trading system called Buttafli9.

22.     Branch further claimed on the website that Cocoon's forecasts have over an 80% accuracy rate in predicting movements in the markets, identified futures as one of the markets, and specifically listed "E-minis, currencies and commodities."

23.     Defendants solicited acquaintances or family members of acquaintances and others whom Branch met or knew throughout the Washington DC metropolitan area.

24.     In his solicitations, Branch told potential investors that he had great success in trading commodity futures contracts and options. Branch offered to share his success with potential investors by trading on their behalf. Branch invited some potential investors to his apartment where he showed them his many computer screens displaying the various trades that he was running, charts that he had made, and demonstrations of his trading program.

25.     Branch referred potential investors to the Cocoon website and/or provided them with copies of a magazine article published in the August 2006 issue of *Technical Analysis of Stocks & Commodities*. This article describes Branch's rise from ex-felon to self-made business man. It specifically discusses Branch's futures trading activity, explaining how he tracks overnight futures trades and how due to investor requests, he "has expanded his techniques to include corn, wheat, oil, and gold." Branch also made the article available on the Cocoon website.

26.     Defendants did not disclose the risks of trading commodity futures either on the

6

Cocoon website or in Branch's personal solicitations. Branch told certain investors that there was no risk associated with their investment in the commodity pool. He characterized their investments as "loans" that were impervious to market fluctuations.

27.     Based on the website, charts and demonstrations of the trading program, and the article, many of the potential investors became convinced of Branch's success as a trader and decided to invest with Defendants. Other investors decided to invest with Defendants after seeing the purported profits earned by friends and relatives from Defendants' purportedly successful trading activities.

28.     Almost all of the prospective investors invested in the pool. Certain investors understood their money was being pooled with funds of other investors to trade commodity futures contracts, among other instruments.

29.     The investors in the pool ("pool participants") entered into "loan agreements" whereby Defendants guaranteed a return of anywhere from 9% to 20% per month on their invested principal and guaranteed a return of the pool participants' original principal within thirty days after a request was made or at the end of the stipulated "loan period."

30.     The pool participants wired or deposited funds totaling approximately $1,291,600 into bank accounts held in the name of Branch or Cocoon. Defendants did not maintain any bank or trading accounts specifically in the name, or on behalf, of the pool.

31.     From those bank accounts, Defendants wired approximately $646,000 to commodity futures trading accounts held in either Branch's name or Cocoon's name at various registered Futures Commission Merchants ("FCM"). Branch's trading resulted in losses every month of trading, except his last month. His commodity futures trading losses totaled approximately $338,000. Branch withdrew approximately $308,000 from those accounts.

7

32.     During the relevant period, at least ten investors, most of whom were initially pool participants, also opened individual trading accounts and granted Defendants power of attorney over the trading in the accounts.  These investors invested a total of approximately $222,500 into the individual accounts.

33.     With respect to at least one individual account investor, Defendants were to be paid approximately 25% of any profits earned.

34.     The individual account investors funded their individual accounts by wiring or depositing funds directly into their trading accounts held in their individual name at FCMs registered with the Commission or, in one instance, at a securities brokerage firm.  The investors received account statements directly from the FCMs.

35.     Defendants' trading of the individual commodity futures managed accounts resulted in losses in almost every month.

36.     Defendants also conducted some limited trading of options on securities using investor funds through a personal account held at a securities brokerage firm.  Branch consistently sustained monthly losses trading these options with a net loss of approximately $12,000.

37.     Defendants used approximately $941,897 of investor funds to make payments to existing pool participants, as purported profit from Defendants' trading, or to pay for personal expenses, such as rent, car payments, credit card payments and hotels.

38.     As Defendants incurred these trading losses and misappropriated funds, Defendants continued to solicit prospective investors and existing investors with claims of profitability.

39.     Defendants did not provide required disclosure documents to either the pool participants or investors holding individual accounts, and did not provide monthly account statements to the pool participants.

40.     In February 2007, Branch disappeared from Maryland.  In the fall of 2007, Branch was arrested and imprisoned for violating the terms of his release.

41.     In January 2008, while still in prison on his parole violation, Branch mailed a letter to at least two investors, admitting that he had lost all of the investors' funds through bad trading decisions, but claiming that he wants to resume trading on behalf of investors once he is released from prison this spring.

## V.

## VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

### COUNT ONE

### VIOLATIONS OF SECTIONS 4b(a)(2)(i) AND (iii) OF THE CEA: FRAUD BY MISAPPROPRIATION AND FRAUDULENT SOLICITATION

42.     The allegations set forth in paragraphs 1 through 41 are re-alleged and incorporated herein by reference.

43.     During the relevant period, Defendants (i) cheated or defrauded or attempted to cheat or defraud other persons, and/or (iii) willfully deceived or attempted to deceive other persons, in or in connection with orders to make, or the making of, contracts of sale of commodities for future delivery, made, or to be made, for or on behalf of any other persons, where such contracts for future delivery were or could be used for the purposes set forth in Section 4b(a)(2) of the CEA, 7 U.S.C. § 6b(a)(2), all in violation of Sections 4b(a)(2)(i) and (iii) of the CEA, 7 U.S.C. §§ 6b(a)(2)(i) and (iii).

44.     By using funds solicited to trade commodity futures for pool participants for personal expenses and to pay other pool participants, Defendants knowingly misappropriated funds in violation of Sections 4b(a)(2)(i) and (iii) of the CEA, 7 U.S.C. §§ 6b(a)(2)(i) and (iii).

45.     By knowingly making material misrepresentations and omissions concerning, but not limited to, Branch's success in trading commodity futures, guaranteeing profits and the risks involved in trading commodity futures, Defendants further violated Sections 4b(a)(2)(i) and (iii) of the CEA, 7 U.S.C. §§ 6b(a)(2)(i) and (iii).

46.     Branch, directly or indirectly, controlled Cocoon and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting Cocoon's violations of Sections 4b(a)(2)(i) and (iii) of the CEA, 7 U.S.C. §§ 6b(a)(2)(i) and (iii).  Branch is therefore liable for these violations pursuant to Section 13(b) of the CEA, 17 U.S.C. § 13c(b).

47.     The foregoing misappropriation, fraudulent acts, misrepresentations, omissions and failures of Branch occurred within the scope of his employment or office with Cocoon. Cocoon is therefore liable for Branch's violations of Sections 4b(a)(2)(i) and (iii) of the CEA, 7 U.S.C. §§ 6b(a)(2)(i) and (iii), pursuant to Section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

48.     Each act of misappropriation and fraudulent solicitation during the relevant period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Sections 4b(a)(i) and (iii) of the CEA, 7 U.S.C. §§ 6b(a)(i) and (iii) (2002).

**COUNT TWO**

VIOLATION OF SECTION 4o(1) OF THE CEA:
FRAUD AS A CPO, CTA and ASSOCIATED PERSON

49.     Paragraphs 1 through 48 are re-alleged and incorporated herein.

10

50.     During the relevant period, Cocoon, while acting as a CPO and CTA, and Branch while acting as an AP of Cocoon, violated Section 4o(1) of the CEA, 7 U.S.C. § 6o(1), in that Defendants directly or indirectly employed or are employing a device, scheme, or artifice to defraud customers or prospective customers, or has engaged or is engaged in transactions, practices or a course of business which operated or operates as a fraud or deceit upon customers or prospective customers by using the mails or other means or instrumentalities of interstate commerce. Defendants' fraudulent acts consisted of, among other things, the misappropriation of pool participant funds and the fraudulent solicitation of investors as set forth above.

51.     Branch, directly or indirectly, controlled Cocoon and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting Cocoon's violations of Section 4o(1) of the CEA, 7 U.S.C. § 6o(1). Branch is therefore liable for these violations pursuant to Section 13(b) of the CEA, 17 U.S.C. § 13c(b).

52.     The foregoing misappropriation, fraudulent acts, misrepresentations, omissions and failures of Branch occurred within the scope of his employment or office with Cocoon. Cocoon is therefore liable for his violations of Section 4o(1) of the CEA, 7 U.S.C. § 6o(1), pursuant to Section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

53.     Each act of misappropriation and fraudulent solicitation made during the relevant period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4o(1) of the CEA, 7 U.S.C. § 6o(1).

## COUNT THREE

VIOLATIONS OF SECTIONS 4m(1) and 4k(2) and (3) OF THE CEA:
FAILURE TO REGISTER AS A COMMODITY POOL OPERATOR,
COMMODITY TRADING ADVISOR AND ASSOCIATED PERSON

54.     The allegations set forth in paragraphs 1 through 53 are re-alleged and incorporated herein by reference.

55.     Cocoon has used the mails or instrumentalities of interstate commerce in or in connection with its business as a CPO and CTA while failing to register with the Commission as a CPO and CTA, in violation of Section 4m(1) of the CEA, 7 U.S.C. § 6m(1).

56.     In soliciting prospective investors, on behalf of Cocoon, to participate in the pool or open individual managed trading accounts, Branch failed to register as an AP of Cocoon which was acting as a CPO and CTA, in violation of Sections 4k(2) and (3) of the CEA, 7 U.S.C. §§ 6k(2) and (3).

57.     Branch, directly or indirectly, controlled Cocoon and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting Cocoon's violations of Section 4m(1) of the CEA, 7 U.S.C. § 6m(1). Branch is therefore liable for this violation pursuant to Section 13(b) of the CEA, 17 U.S.C. § 13c(b).

58.     The foregoing failure of Branch to register as an AP occurred within the scope of his employment or office with Cocoon. Cocoon is therefore liable for his violations of Sections 4k(2) and (3) of the CEA, 7 U.S.C. §§ 6k(2) and (3), pursuant to Section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

## COUNT FOUR

VIOLATIONS OF COMMISSION REGULATION 4.20:
CPO'S ACCEPTING POOL FUNDS OTHER THAN IN THE NAME OF THE
POOL, COMMINGLING OF POOL FUNDS WITH OTHER PROPERTY,
AND FAILURE TO TREAT THE POOL AS A SEPARATE LEGAL ENTITY

59.     The allegations set forth in paragraphs 1 through 58 are re-alleged and incorporated herein by reference.

60.     By accepting or depositing pool funds in bank and trading accounts held in the name of Cocoon or Branch, and not into accounts in the name of the pool, Cocoon failed to operate the pool as a legal entity separate from itself as the pool operator, in violation of Regulation 4.20(a)(1), 17 C.F.R. § 4.20(a)(1).

61.     By accepting pool funds in the name of Branch or Cocoon and not in the name of the pool, Cocoon, while operating as a CPO, violated Regulation 4.20(b), 17 C.F.R. § 4.20(b).

62.     By commingling pool funds in account in Branch's or Cocoon's name, Cocoon violated Regulation 4.20(c), 17 C.F.R. § 4.20(c).

63.     Branch, directly or indirectly, controlled Cocoon and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting Cocoon's violations of Regulations 4.20(a)(1), (b) and (c), 17 C.F.R. §§ 4.20(a)(1), (b) and (c).  Branch is therefore liable for these violations pursuant to Section 13(b) of the CEA, 17 U.S.C. § 13c(b).

## COUNT FIVE

VIOLATIONS OF COMMISSION REGULATION 4.21:
FAILURE TO PROVIDE POOL DISCLOSURE DOCUMENTS

64.     The allegations set forth in paragraphs 1 through 63 are re-alleged and incorporated herein by reference.

65.     Regulation 4.21(a)(1), 17 C.F.R. § 4.21(a)(1), requires that a CPO must furnish prospective pool participants with a disclosure document containing specific language set forth by regulation by no later than the time the CPO delivers or causes to be delivered to the prospective participant a subscription agreement for the pool.

66.     In addition, prior to accepting or receiving funds, Regulation 4.21(b), 17 C.F.R. § 4.21(b), requires a CPO to receive from pool participants an acknowledgment signed and dated by the participants that they received the disclosure document.

67.     Cocoon failed to furnish pool participants with a disclosure document and failed to receive signed and dated acknowledgments from the pool participants stating that they received the disclosure document, in violation of Regulations 4.21(a)(1) and (b), 17 C.F.R. §§ 4.21(a)(1) and (b).

68.     Branch, directly or indirectly, controlled Cocoon and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting Cocoon's violations of Regulations 4.21(a)(1) and (b), 17 C.F.R. §§ 4.21(a)(1) and (b).  Branch is therefore liable for these violations pursuant to Section 13(b) of the CEA, 17 U.S.C. § 13c(b).

69.     Each failure of Cocoon to deliver a disclosure document to a prospective pool participant and each failure of Cocoon to receive from a prospective pool recipient an acknowledgement of receipt of a disclosure document, is alleged as separate and distinct violations of Regulations 4.21(a)(1) and (b), 17 C.F.R. §§ 4.21(a)(1) and (b), respectively.

## COUNT SIX

### VIOLATIONS OF COMMISSION REGULATION 4.22: FAILURE TO PROVIDE MONTHLY ACCOUNT STATMENTS

70.     The allegations set forth in paragraphs 1 through 69 are re-alleged and incorporated herein by reference.

71.     Regulation 4.22, 17 C.F.R. § 4.21, requires that a CPO, registered or required to be registered under the CEA, periodically distribute to each pool participant an Account Statement containing the information required by regulation.

72.     Cocoon failed to furnish pool participants with required Account Statements, in violation of Regulation 4.22, 17 C.F.R. § 4.22.

73.     Branch, directly or indirectly, controlled Cocoon and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting Cocoon's violation of Regulation 4.22, 17 C.F.R. § 4.22. Branch is therefore liable for this violation pursuant to Section 13(b) of the CEA, 17 U.S.C. § 13c(b).

74.     Each occasion upon which Cocoon failed to deliver a required Account Statement to a pool participant, is alleged as a separate and distinct violation of Regulation 4.22, 17 C.F.R. § 4.22.

### COUNT SEVEN

#### VIOLATIONS OF COMMISSION REGULATION 4.31:
#### FAILURE TO PROVIDE CTA DISCLOSURE DOCUMENTS

75.     The allegations set forth in paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

76.     Regulation 4.31(a), 17 C.F.R. § 4.31(a), requires that a CTA registered or required to be registered under the CEA, deliver or cause to be delivered to a prospective client a disclosure document containing specific language set forth by regulation by no later than the time the trading advisor delivers to the prospective client an advisory agreement to direct or guide the client's account.

77.     Further, Regulation 4.31(b), 17 C.F.R. § 4.31(b), provides that the CTA may not enter into an agreement with a prospective client to direct the client's commodity interest

account or to guide the client's commodity interest trading unless the trading advisor first receives from the prospective client an acknowledgement signed and dated by the prospective client stating that the client received a disclosure document.

78.     Cocoon failed to furnish clients holding individual managed trading accounts with a disclosure document and failed to receive signed and dated acknowledgments from the clients stating that they received the required disclosure document, in violation of Regulations 4.31(a) and (b), 17 C.F.R. §§ 4.31(a) and (b).

79.     Branch, directly or indirectly, controlled Cocoon and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting Cocoon's violations of Regulations 4.31(a) and (b), 17 C.F.R. §§ 4.31(a) and (b). Branch is therefore liable for these violations pursuant to Section 13(b) of the CEA, 17 U.S.C. § 13c(b).

80.     Each failure of Cocoon to deliver a disclosure document to a prospective client and each failure of Cocoon to receive from a prospective client an acknowledgement of receipt of a disclosure document, is alleged as separate and distinct violations of Regulations 4.31(a) and (b), 17 C.F.R. §§ 4.31(a) and (b), respectively.

## VI.

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the CEA, 7 U.S.C. § 13a-1 (2002), and pursuant to its own equitable powers enter:

        a)     a permanent injunction prohibiting the Defendants from engaging in conduct violative of Sections 4b(a)(i) and (iii), 4k(2) and (3), 4m(1) and 4o(1) of the CEA, 7 U.S.C. §§ 6b(a)(i) and (iii), 6k(2) and (3), 6m(1) and

6o(1) (2002), and Regulations 4.20, 4.21, 4.22 and 4.31, 17 C.F.R. §§ 4.20, 4.21, 4.22 and 4.31 (2007);

b) an order directing the Defendants to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices which constitute violations of the CEA or Regulations, as described herein, and interest thereon from the date of such violations;

c) an order directing the Defendants to make full restitution to every investor who was defrauded by the Defendants as a result of acts and practices which constituted violations of the CEA and Regulations, described herein, and interest thereon from the date of such violations;

d) an order directing the Defendants to pay a civil monetary penalty in the amount of not more than the higher of $130,000 or triple the monetary gain to the Defendants for each violation of the CEA or Regulations; and

e) such other and further remedial ancillary relief as the Court may deem appropriate.

Dated: March 2 Y, 2008

ATTORNEYS FOR THE PLAINTIFF
COMMODITY FUTURES TRADING COMMISSION

Kevin S. Webb, D. Md. Bar No. 23884
Gretchen L. Lowe, DC Bar No. 421995
Commodity Futures Trading Commission
1155 21st Street, NW
Washington, DC 20581
Telephone: (202) 418-5000
e-mail: *kwebb@cftc.gov*
e-mail: *glowe@cftc.gov*
Fax: (202) 418-5538

17